## YOUNGER v. MASSEY.

## BROWN v. CARROLL.

1. INADVERTENT ERRORS in a Circuit decree conceded, but held to be imma-
terial.

2. FINDINGS OF FACT.—A statement of fact by the Circuit Judge not sustained
by the record will not be corrected where it relates to a matter that oc-
curred in his presence.

3. ACCOUNTING—TRUSTS—RES JUDICATA.—Where a Circuit decree sets aside
a deed of assignment, and requires B., one of the defendants, to account
for all moneys which came into his hands from the sale of goods of the
assignor, and for all such goods taken by himself, B. cannot be held to
account, except to the extent of the price agreed upon at private sale, for
goods of the assignor transferred to B., levied on as the property of the
assignor, and replevied by B. before the deed of assignment was executed,
and afterwards retransferred to the assignee, and included in a subsequent
private sale by the assignee to B., under authority of the creditors, of all
the goods of the assignor, for the reasons, (1) that the sale was a fair sale,
judiciously made by the assignee, and (2) because the Circuit decree re-
quiring such accounting, with all these facts known, was so limited.

4. ASSIGNMENT FOR CREDITORS—VACATING DEED—CREDITORS' BILL—CASES
CRITICISED.—Where a judgment creditor files his complaint in behalf of
himself and other creditors, to set aside a deed of assignment for fraud,
and the Circuit decree directs all creditors to be called in to establish their

demands, to which direction there is no exception, the action, therefore, becomes a creditors' bill, and all creditors who come in are entitled to share *pro rata* in the fund realized after satisfaction of liens.[1] This case distinguished from Ryttenburg *v.* Keels, 39 S. C., 203, and Curlee *v.* Rembert, 37 *Id.*, 214, followed.

5. IBID.—IBID.—RELEASING CREDITORS.—Where a deed of assignment, valid on its face, gives a preference to releasing creditors, several creditors file releases thereunder, and the deed is afterwards set aside for fraud, the releases become inoperative, and the releasing creditors are entitled to share *pro rata* with non-releasing creditors in the distribution of the fund realized by the court from the sale of the estate attempted to be assigned.

6. IBID.—IBID.—CREDITORS' MEETING.—After a deed of assignment has been set aside, a creditor, who did not attend the meeting of creditors of the assignor, stands upon no different footing from those who did attend and participate.

7. COSTS IN EQUITY are within the discretion of the chancellor, and were properly decreed in this case against the losing party.

8. JUDGMENT—DISMISSING COMPLAINT—INTEREST.—There was error in dismissing a complaint for claim and delivery of goods levied on as the property of the assignor and replevied by the plaintiff in that action, until it was ascertained whether the judgment under which the levy was made, and which was ordered to be paid out of the fund brought into court under another action, heard with this claim and delivery action, would be fully paid. And there was further error in not directing the interest on this judgment to be paid.

9. IBID.—VACATING ASSIGNMENT.—Judgments obtained against an assignor after the execution of a deed of assignment, and before the filing of a decree vacating such assignment, are entitled to a lien on the lands of the assignor.

10. AN EXCEPTION alleging error, predicated upon errors alleged in exceptions which were overruled, must fall with the others.

Before WITHERSPOON, J., York, July, 1893.

This cause came to this court upon exceptions to the Circuit decree. Messrs. Hart & Hart, in behalf of Younger and certain non-releasing creditors, alleged error as follows:

1. Error in stating that the actions were consolidated and heard together *by consent;* and in not stating that they were consolidated on motion of Frank H. Brown, no objection being made by any of the other parties. 2. Error in not stating

---

[1] See this subject discussed in 17 L. R. A., 345.

that the hearing was upon the record in the action first above entitled (including a printed copy of the case for the hearing of the first appeal) and some testimony taken in open court, as well as upon the pleadings, etc. 3. Error in stating that Wallace, as assignee, advertised for one week for bidders for the stock of goods; and in not stating that he advertised for three days only. 4. Error in stating that "Frank H. Brown's attorneys, at the time the order of reference was granted, objected to so much of said order as extended the reference beyond the limits prescribed by the decree of Judge Izlar." 5. Error in holding that Judge Izlar "directed for what the defendant, Frank H. Brown, should account, and decreed a *limit* to the accounting to be required of Frank H. Brown." 6. Error in holding that he was not "at liberty to enlarge the scope of accounting beyond the limits" erroneously supposed to be "fixed in said Circuit decree." 7. Error in holding that the testimony shows that Brown paid a fair price for the stock of goods; and error in holding that the price at a forced sale, after three days' advertisement, should be accepted as a fair price, in the face of the proof to the contrary. 8. Error in holding that Brown knew that the assignee was authorized to sell the goods, and error in holding that the assignee was so authorized. 9. Error in holding that Judge Izlar "restricted the liability of Brown;" and error in concluding that Brown should not be required to pay more than forty five per cent. of the invoiced price for the stock of goods, but should be permitted (despite his fraud) to reap a profit out of the goods, and should not be charged with the actual and true value of the goods. 10. Error in sustaining the second exception to the referee's report, and in modifying the report, and in not wholly confirming the same, and especially the finding that the stock of goods was worth seventy-five per cent. of the invoice price. 11. Error in stating that one of the attorneys for L. C. Younger admitted at the hearing "that he regarded the action as a creditors' bill until he saw the decision in the case of *Ryttenburg* v. *Keels*;" whereas, the admission of counsel was that he thought, and expressed the opinion, that L. C. Younger would have no priority over other creditors, un-

til he saw the said decision. 12. Error in not stating that counsel for L. C. Younger admitted and contended at the hearing that the bill of the said L. C. Younger was a creditors' bill. 13. Error in holding that the attempted surrender and cancellation of the releases by Henry Massey, entitled the releasing creditors to participate equally with the non-releasing creditors in the assets in the hands of the receiver; and specially as to Frank H. Brown—to relieve whom the said Henry Massey, being yet in pursuit of his fraudulent purpose, executed the so-called surrender and cancellation of the releases. 14. Error in concluding that the non-releasing creditors were not entitled to preference over the releasing creditors. 15. Error in dismissing the action second above entitled, and in not adjudging that the defendants therein were entitled to a return of the goods (of which Brown had obtained possession), and in not fixing the value of the goods, and finding the same to have been $855.55. 16. Error in not charging F. H. Brown with $855.55 as the value of the goods that had been levied on by L. C. Younger and Brown, Weddington & Co., and which were not covered by the deed of assignment to Joseph F. Wallace. 17. Error in nullifying the provisions of the decree of Judge Izlar, in holding that the defendant, Joseph F. Wallace, should not be subjected to the payment of any portion of the costs. 18. Error in holding that any other creditors than those who were in the same situation as L. C. Younger at the time of the filing of the bill, and, like him, needed the aid of court, could participate equally with L. C. Younger in the funds brought into court by the bill of the said L. C. Younger. 19. Error in not holding that the deed of assignment had not been set aside as to those creditors who had accepted its terms. 20. Error in directing the receiver to pay *pro rata* upon the claims established; and error in not directing that the non-releasing creditors be paid before the releasing creditors. And in behalf of L. C. Younger only: 21. Error in not holding that L. C. Younger—the only creditor before the court at the time of the rendition of the decree of Judge Izlar—is entitled to priority over all other creditors, as to all of his claims, so far as the personal estate is concerned. 22. Error in holding

that L. C. Younger was estopped from claiming priority over the creditors represented by Messrs. Wm. B. McCaw and Thos. F. McDow. 23. Error in not directing the receiver to pay the claims of L. C. Younger in full, before applying any part of the assets to the claims of the other creditors. In behalf of L. C. Younger and Brown, Weddington & Co.: 24. Error in not directing that interest, as well as costs, should be paid by the receiver on the trial justice judgment mentioned in the decree.

The creditors represented by T. F. McDow and Wm. B. McCaw, respectively, except to the decree: I. [Same as No. 14, *supra.*] II. For error in holding that, at the date of the filing of the complaint in the first above entitled action, and at the date of the filing of Judge Izlar's decree, and at the date of the filing of the receiver's report of the creditors who had proved their claims under his call, viz: during the hearing of the cause on the 7th day of July, 1893, the creditors who had accepted the terms of the assignment and filed releases, were still creditors of H. Massey and H. Massey & Co., and in not holding that the non-releasing creditors were the only holders of existing claims against Henry Massey and H. Massey & Co. at the dates above mentioned. III. For error in holding that the attempted surrender and cancellation of the releases by Henry Massey at the hearing on July 7th, 1893, entitled the releasing creditors to prorate with the non-releasing creditors in the assets in the hands of the receiver, and in not holding that the claims of the releasing creditors had been discharged by the acceptance of the terms of the deed of assignment, and their solemn releases under seal. IV. [Same as No. 19, *supra.*] V. [Same as No. 3, *supra.*] VI. [Same as No. 5, *supra.*] VII. [Same as No. 6, *supra.*] VIII. For error in finding that Frank H. Brown paid a fair price for the stock of goods; and in holding that the price at a forced sale after three days' advertisement should be accepted as a fair price, the proof being to the contrary. IX. [Same as No. 8, *supra.*] X. For error in not finding, as fact, that J. H. Sloan, a large creditor, at the first meeting of creditors, by his attorney, an-

nounced that he declined to participate in the meeting, and did not attend the meeting at which the resolution was passed, directing sale of the stock of goods. XI. For error in not finding that Hammond & Justice and Baldwin Fertilizer Company were not present, either in person or by attorney, at the meeting of creditors, at which the resolution authorizing the sale of the stock of goods was passed. XII. [Same as No. 9, *supra*.] XIII. For error in not charging F. H. Brown with the true value of the goods, at least so far as the creditors, J. H. Sloan, Baldwin Fertilizer Company, and Hammond & Justice, all of whom are strangers to the passage of the resolution authorizing the sale of the goods, are concerned. XIV. [Same as No. 10, *supra*.] XV. For error in holding that the defendant, Joseph F. Wallace, should not be subjected to the payment of any portion of the costs. XVI. [Same as No. 20, *supra*.]

F. H. Brown excepted, alleging error as follows: I. Error in holding that any liens had been acquired upon the real estate embraced in the deed of assignment by the judgments that had subsequently been entered up, in the face of the fact that previously the Circuit Court had (not simply set the said deed aside, but) taken the entire assets in hand for the benefit of all the creditors; and in this connection, error in not directing a sale of said real estate for distribution, but in directing that the judgment creditors should proceed against the said real estate, thus debarring the other creditors from any interest therein. II. Error in directing that the defendant, F. H. Brown, should pay all costs, thus burdening him with the expenses incident upon the distribution of the fund. III. Error in not fixing the proportion of the fee of plaintiff's counsel, that should be paid by the plaintiff in the event of plaintiff's priority being allowed.

*Messrs. Hart & Hart*, for Younger, Carroll, and non-releasing creditors.

*Messrs. T. F. McDow, W. B. McCaw*, and *Finley & Brice*, for non-releasing creditors.

*Messrs. C. E. Spencer* and *Wilson & Wilson,* for Brown, Massey, and releasing creditors.

March 12, 1894.   The opinion of the court was delivered by

MR. JUSTICE POPE.   L. C. Younger instituted his action for and on behalf of himself and the other creditors of Henry Massey, who had been a merchant at Tirzah, in York County, in this State, to set aside as null and void certain deeds between Henry Massey and Frank H. Brown, and also a deed of assignment for benefit of creditors made by Henry Massey to Joseph F. Wallace, because such deeds were in law fraudulent, having been made to hinder and delay the creditors of Henry Massey, who was insolvent.   Judge Izlar, who heard the cause, agreed with the plaintiff that such deeds were all void, and in this conclusion, on appeal, this court agreed, affirming the Circuit decree.   39 S. C., 115.

After the remittitur reached the Circuit Court, L. C. Younger applied, on notice, for the appointment of a special referee to take the account and make the report required by Judge Izlar's decree, to receive testimony and report the value of the stock of goods owned by H. Massey & Co. and Henry Massey, and which Henry Massey attempted to sell and deliver to F. H. Brown on 17th day of November, 1891; and also to receive testimony and report the disposition made of the stock of goods, and how much in value was taken out of the stock by F. H. Brown for his own use and how much by him sold to others; also to report what creditors of H. Massey & Co. and Henry Massey filed releases with Joseph F. Wallace, named as assignee in the deed executed by Henry Massey on 16th day of February, 1892, with leave to such special referee to report upon special matters, with a direction to report with all convenient speed.   This application was made to His Honor, Judge Witherspoon, at chambers, who in the order dated 1st June, 1893, embodied the foregoing requests in the same, limiting, however, "that the defendants were not to be bound by the same, so far as it may add to the decree of Judge Izlar, if it shall appear at the coming in of the report that it was not proper to add to the directions in the decree at this time."

REP.]                    November Term, 1893.

Mr. McFadden as such special referee made his report, accompanied by the accounts taken before him, and the testimony offered by both sides to the controversy, on 24th June, 1893.

On 25th day of November, 1891, L. C. Younger having obtained five judgments in the Trial Justice Court of L. T. Carroll, Esq., against Henry Massey, caused a levy to be made upon $855.55 of the goods of H. Massey & Co. in the store house at Tirzah, and thereafter Brown, Weddington & Co. also levied upon this same stock of goods. On the 24th December, 1891, F. H. Brown, claiming them under the deed of 17th November, 1891, executed to him by Henry Massey, upon entering into a bond with good sureties, had such goods delivered to him, and brought his action to recover said goods from L. C. Younger and G. Milus Carroll, the constable, who had seized them under such executions. This action had never been tried, but was pending in the Court of Common Pleas for York County. Due notice was given by F. H. Brown that he would move the court for an order consolidating this action with that of Younger as plaintiff against Massey *et al.*, and on the 7th day of July, 1893, such an order was made by Judge Witherspoon, no objection being raised thereto in open court.

So these two causes came on to be heard before Judge Witherspoon on the 7th and 8th days of July, 1893, when additional testimony was also heard. The Circuit Judge filed his decree on 15th August, 1893, wherein he held: 1. That the sale of the stock of goods of H. Massey & Co. and Henry Massey, which he had intended to assign to J. F. Wallace by his deed therefor, dated 16th February, 1892, and which had been sold by said Wallace to F. H. Brown at forty-five cents on the dollar of the invoice price thereof, amounted to $1,905, thereby overruling the value placed thereon by the special referee, which was $3,016.98. That this sum of $1,905, for which such goods were sold, included the $855.55 worth of goods that had been levied upon by virtue of the five judgments of Younger *vs.* Massey, and one of Brown, Weddington & Co. *vs.* Massey, in the Trial Justice Court of L. T. Carroll, Esq., and which had been turned over to F. H. Brown under his bond in his suit against Younger and Carroll as constable. This conclusion as reached by the

Circuit Judge was based upon two considerations—the first, that an interpretation of Judge Izlar's decree required that such should be the case, and the second, that the testimony in the case also required such finding. 2. That the five judgments of Younger and the one of Brown, Weddington & Co., obtained in L. T. Carroll's Trial Justice Court, and the costs thereof, should be paid in full from the proceeds of the sale of the stock of merchandise of F. H. Brown in the hands of the said Brown. 3. That F. H. Brown should be required to pay to Wallace as receiver, for the goods he had taken himself from the stock of Massey, and what he had sold to others, and for cash on hand when Brown took possession of such stock, the sum of $588.37, with interest thereon from 16th February, 1892. 4. That creditors of Massey & Co. and Massey, who were entitled to participate in the division of the assets in the hands of Wallace as receiver, amounted to $27,416.50. 5. That F. H. Brown was entitled, as one of the creditors, to receive his *pro rata* share of the assets in the hands of Wallace as receiver. 6. That the complaint of Younger was in behalf of himself and of all other creditors of Massey, when he sought to set aside the deeds in question, the appointment of a receiver, and a distribution of the assets of said Massey amongst said creditors, and, therefore, except as provided in the second finding, he was not entitled to any priority over the other creditors. 7. That the creditors who had filed releases of their claims against Massey on the theory that his estate would be distributed by his assignee, under the deed of February, 1892, were not estopped thereby from presenting their claims under the call for creditors made in pursuance to Judge Izlar's decree. 8. That the attorneys of Younger were entitled to be first paid out of the assets in the hands of the receiver their counsel fee, this being a creditors' bill. 9. That the receiver should prorate, after the counsel fee was paid and the judgments in the six trial justice judgments and costs were paid, amongst all the creditors *pro rata*, but that such creditors who had recovered judgments against Massey prior to 24th May, 1892, which were liens on his lands, had the right to have the sheriff sell such lands, and apply the proceeds in accordance with the law. 10. That the suit of F. H. Brown

*vs.* Younger and Carroll, constable, should be dismissed, the plaintiff therein paying all the costs of such suit. 11. That F. H. Brown and Massey should pay all the costs of the first suit, and that Wallace should pay no costs.

From this decree of Judge Witherspoon many of the creditors have appealed on various grounds, and Frank H. Brown appeals on three grounds. We will not undertake to reproduce those exceptions, but, in the views which we shall present, will endeavor to cover every one of them. When the case is reported these grounds of appeal should appear.

Exception is taken that the Circuit Judge was not happy in his choice of words when he stated that the two actions were consolidated and heard together by consent; that, on the contrary, he should have stated that the consolidation was made on the motion of F. H. Brown, without objection from any of the other parties. Accuracy in the Circuit Judge required that he should have so stated. After all, this exception borders on the hypercritical, for, unquestionably, no one objected to the consolidation, and the Circuit Judge might very well have inferred a consent from the acquiescence of attorneys. Practically this exception (No. 1 of Younger) is of no moment. So, too, the expression of the Circuit Judge that the hearing before him was based upon the pleadings and the reports of Joseph F. Wallace, as receiver, and of John C. McFadden, as referee, was not strictly accurate, for, in addition to these, some testimony taken before the Circuit Judge himself, and the record in the first case, including a printed copy of the case for appeal, were before, and were considered by, the Circuit Judge in formulating his decree. No harm has resulted to any one thereby, as is admitted by the second exception of Younger.

Akin to these harmless errors is the statement in the decree that Wallace, as assignee, advertised for one week for bidders of the stock of goods, when the fact was, the advertisement appeared in the Yorkville Enquirer, which is a newspaper published once in each week, only three days before the sale occurred. This is the third exception of Younger. To the same class belongs the matter complained of in Younger's

fourth exception, that the judge was in error in stating that Frank H. Brown's attorneys, at the time the order of reference was granted, objected to so much of the order as extended the reference beyond the limits prescribed by the decree of Judge Izlar. The order of reference made by Judge Witherspoon was not made by consent, and upon it appears the restriction he had in his mind when he was preparing his decree. He knew at whose instance those words were written. They did not come, very naturally, from Younger or his attorneys. The only other parties before him were Brown and Massey, and their attorneys, from whom it was most natural such a course would be pursued. This was a matter that occurred in the presence of the Circuit Judge. It is more likely that his memory is accurate than any one who is not clothed with his responsibility for accuracy; and, having been found as a fact by him, we will not disturb it.

The next question suggested by the exceptions relates to what limitation, if any, was fixed by the decree of Judge Izlar to the accounting to be held with Frank H. Brown, in connection with the stock in trade of his son-in-law, Henry Massey. By reference to the complaint of L. C. Younger, in the action instituted by him on the 24th May, 1892, it will be seen that it is there demanded: "Fourth. That Frank H. Brown may be required to account for all moneys received by him from sales of parts of the stock of merchandise hereinabove mentioned, between the 17th day of November, 1891, and the 16th day of February, 1892; and that he, also, account for goods taken out of the said stock for his own use, and for goods by him sold to others." Judge Izlar's decree on this point is as follows: "That the defendant, Frank H. Brown, do acccount, before a referee to be appointed by the court, for all moneys which came into his hands, or which came into the hands of others for him, from the sale of goods, wares, and merchandise out of the stock of H. Massey & Co., at Tirzah, in the county and State aforesaid, and for all goods taken thereout for his own use between the 17th day of November, 1891, and the 16th day of February, 1892." This decree of Judge Izlar has been affirmed by this court. 39 S. C., 115. By the

order of Judge Witherspoon, on the 1st June, 1893, John C. McFadden was appointed the referee to take the accounts required by Judge Izlar's decree.

Clearly, therefore, such special referee was bound to observe the limits fixed by Judge Izlar's decree, and only such matters, and upon the lines and terms therein specified, could such special referee move, except, probably, by consent of all the parties to the action. It is acknowledged that no such consent of all the parties to the action for anything further than the counsel fee for plaintiff's attorneys was given. It seems to us that Judge Izlar has fixed limits within which this accounting must be had. If the terms of the decree were not sufficiently broad, it was the province of the plaintiff Younger to have taken steps to have corrected such error. Not having done so, but the decree in its entirety having been affirmed by this court, it is not in the power of the parties to this action to enlarge it, except, as before suggested, by unanimous consent. The only difficulty, as we understand the exceptions, grows out of $855.55 in value of such goods that were replevied by Frank H. Brown in his suit against Younger and Carroll, the constable of the one part, and the stock of goods, which went into the hands of the assignee, under the deed of 16th February, 1892, of the other part.

In regard to the first fund ($855.55), the appellants allege that inasmuch as this portion of Massey's goods were not included in the deed of assignment made on 16th February, 1892, the Circuit Judge could not have contemplated in his decree (when he is concerned about what assets of Massey were already in the hands of Wallace, as assignee, which such assignee was directed to hold as receiver in this case), the inclusion of such $855.55 worth of goods in the direction that such Wallace, as receiver, should hold "*all assets* now held by the said Joseph F. Wallace, and all securities taken by him as assignee." But we do not see how this follows, for it was known to all parties to the cause that F. H. Brown had turned these $855.55 of goods over to Wallace, as assignee, and that Wallace, as assignee at the time the action was commenced, under the advice of creditors, had sold all the goods, including this $855.55, to F. H.

Brown, and had taken Brown's note and mortgage therefor, which were assets of such assigned estate and securities held by Wallace as assignee.   It seems to us that the Circuit Judge did not err in this matter.

We will next consider the sale made by the assignee, Wallace, of the goods, wares, and merchandise at forty-five per cent. of the invoice price.   Of course, courts must hold all persons who act for others to the utmost good faith.   When the conduct of Mr. Wallace is scrutinized from this standpoint, he appears to great advantage.   A nicer tribute to this quality of his could not have been paid than was done by the plaintiff, when he prayed that Wallace, who had acted as assignee, might be appointed to hold these assets as receiver.   Aside from this, however, we have looked in vain through the testimony for any evidence of the want of care and good judgment as to his trust by Mr. Wallace.   It is true, he only advertised one time for the sale, yet he had three offers for the purchase of the property.   One bid was at forty cents, one at forty-five cents, and another at fifty cents on the dollar of the invoiced price of the merchandise in question.   It is to be noticed, however, that in accepting the bid of forty-five per cent. he acted a prudent part, for here he secured a responsible bid, secured by a mortgage on land; while, in refusing to accept the bid of fifty per cent., he was guided by good sense and sound judgment, for this bidder offered no security except the mortgage of the stock of goods itself.   It is true, at the hearing some person spoke of the goods being worth seventy-five per cent. of their invoiced price, but this was with a view to their being retailed.   Common experience shows how illusory such an estimate always proves. Considering this matter apart from Judge Izlar's decree, we hold that the conclusion of Judge Witherspoon must be sustained. But, in addition to this, we think that Judge Witherspoon was right in the view that Judge Izlar's decree had already passed upon this matter.   It follows, therefore, that the 5th, 6th, 7th, 8th, 9th, 10th, and 16th exceptions of Younger, and the 6th, 7th, 8th, 9th, 12th, 13th, and 14th exceptions of the creditors, represented by T. F. McDow and Wm. B. McCaw, must be overruled.

The next inquiry is, was the action commenced by Younger as plaintiff what is known as a creditors' bill? A full answer to this query is furnished by the decree of Judge Izlar; 4 he made it a creditors' bill, and no appeal was taken from his construction of the aim and force of the complaint. Throughout his decree he refers to the hindering, delaying, and defrauding of the creditors of Massey. The plaintiff alleged that such creditors were hindered, delayed, and defrauded by the two deeds that were declared null and void by the decree. The judge ordered and decreed that Joseph F. Wallace, as receiver, "do publish a notice to all the creditors" of Massey "to present and prove their respective demands before him within a certain specified time." The twelfth exception admits that counsel for L. C. Younger admitted and contended at the hearing that the bill of the said Younger was a creditors' bill. So far, therefore, no party to this action appears to *directly* contest this point. *In effect* this is done, it seems to us, when Younger contends, as he does in his 21st, 22d, and 23d exceptions, that there was error in not holding that L. C. Younger, the only creditor before the court at the time of the rendition of Judge Izlar's decree, was entitled to priority over all other creditors as to all his claims so far as the personal estate was concerned; that there was error in holding that Younger was estopped from claiming priority over the creditors represented by Messrs. Wm. B. McCaw and Thos. F. McDow; and that there was error in not directing the receiver to pay the claims of L. C. Younger in full before applying any part of the assets to the claims of other creditors.

It is very certain no priority is fixed in Judge Izlar's decree for Younger. It is equally certain that the practice in equity in suits brought by one or more creditors for the benefit of themselves and other creditors, does not give any such priority. Then, we may ask, upon what possible ground can such an extraordinary claim be predicated? The answer is, that a recent decision of this court (*Ryttenburg* v. *Keels*, 39 S. C., 203,) has this effect. An examination of that decision will show that the Circuit Judge was right. It was not a creditors' bill. It was confessedly an effort on the part of Ryttenburg to legalize

an advantage he alone had secured to his exclusive benefit. Such was the condition of parties in the case of *Claflin & Co.* v. *Iseman*, 23 S. C., 416. The case at bar is precisely that of *Curlee* v. *Rembert*, 37 S. C., 214. In the case last cited, a deed was assailed by one creditor as fraudulent and void, and upon the hearing on Circuit, it was decreed that such deed was fraudulent and void, and that the proceeds of the land when sold should be distributed amongst the creditors of the grantor of the deed according to law. No appeal was taken from such part of the Circuit decree. But when, on the call for creditors, two presented themselves, the plaintiff complained of the admission of the second to the benefit of the decree, on the ground that he had done all the work; but this court, when they heard his appeal on that ground, refused to accord him any such priority. Hence these exceptions must be overruled.

The appellants next present the difficulty growing out of these facts: When Massey executed his deed of assignment for the benefit of his creditors in February, 1892, a large number of such creditors accepted under such deed, and, as required by its terms, filed with the assignee releases under their respective hands and seals of Henry Massey from any debts due by him to them. When the call was made for creditors of Massey under Judge Izlar's decree, all these releasing creditors presented themselves as subsisting creditors, proved their demands, and have been decreed to have a *status* as creditors of Massey equal to that of such of his creditors as disregarded his assignment, and from first to last elected to treat it as a nullity. The non-releasing creditors now complain of this, and deny that the releasing creditors should be allowed to share *pro rata* with them. We regard the decree of Judge Witherspoon as correct. On this point he says: "The non-releasing creditors contend that the releasing creditors have discharged their claims, and are not entitled to participation in the distribution of the funds which have, or may hereafter, come into the hands of the receiver. At the hearing, Henry Massey proposed, in writing, to surrender to the court the releases executed to the assignee by creditors, and in said writing acknowledged the existence of the debts released,

as there had been an entire failure of the consideration which moved the creditors to execute said releases. The general rule, unquestionably, is that a release under seal by a creditor to a debtor discharges the debt. Such a release imports consideration. In *LePrince* v. *Guillemot*, 1 Rich. Eq., 200, it is said, that if the creditor accepts, with a full knowledge of all the facts, it is a new contract, by which he is bound, and, being a voluntary act, it cannot be regarded as a very great hardship. But it is also stated that this view of the matter is founded upon the supposition that the creditor has a full knowledge of all of the circumstances necessary to enable him to estimate correctly all the means to which he might resort for the payment of his debt.

"The deed of assignment from Henry Massey to Joseph F. Wallace exhibited no vice upon its face. There is no evidence that any of the releasing creditors, other than Frank H. Brown, had any knowledge of Henry Massey's fraudulent intent in executing the deed of assignment. The releasing creditors acted upon the natural assumption that the deed of assignment would stand and would be executed for the benefit of creditors. The releasing creditors would have no cause for complaint, whether they released much or little, if the assignee had been permitted to execute the trust. Now, that the court has set aside the assignment and taken charge of the assigned assets, it would be a great hardship to deprive *bona fide* creditors, who have derived no benefit from the release, from participation in the assigned assets, being administered by the court. The releasing creditors have established their demands before the receiver under the call for creditors; they are as much parties to this controversy as the non-releasing creditors. A Court of Equity will not extend the operation of the release beyond the intent of the parties, and will inquire into the consideration of the release, to prevent injustice being done to any *bona fide* creditors, now before the court seeking the aid of equity. As long as there is a fund in court for distribution, a Court of Equity will respect the claims of *bona fide* creditors which have been established in said court. I conclude, that the non-releasing creditors are not entitled to be preferred in the distri-

bution of the fund which may come into the hands of the receiver." It follows, therefore, that exceptions numbered 13, 14, 18, 19, and 20 of Younger, and those numbered 1, 2, 3, 4, 5, and 16, presented for creditors, represented by Messrs. McDow and McCaw, should be dismissed.

So far as exceptions 10 and 11, presented by Messrs. McDow and McCaw, are concerned, complaining, as they do, that the Circuit Judge erred in not finding as a fact that J. H. Sloan, a large creditor of Massey, declined to participate in the meeting of creditors called by Wallace, as assignee, and, also, that Hammond, justice, and Baldwin Fertilizer Company were not present either by attorney or in person at such meeting, we apprehend little need be said. There was really no legal vitality in such meeting of the creditors, while they thought the assignment was an actuality, for the court has set the assignment aside, and, of course, all proceedings under it are nullities. The Circuit Judge recognized this as true, but, still, as a majority of the creditors had advised a sale of the personal property of Massey, and Judge Izlar, by his decree, seemed to recognize such action as for the best, and no appeal was taken therefrom, such facts were commented on by him, not to the prejudice of these creditors, however, any more than the balance of the creditors. These exceptions are overruled.

Again, exceptions 17 of Younger, and 15 of Messrs. McDow and McCaw, relating to the alleged error of the Circuit Judge in excusing Wallace from the payment of costs, will be overruled. This being an equity cause, the matter of costs is in the discretion of the Circuit Judge, and does not contravene anything contained in the decree of Judge Izlar.

Exceptions 15 and 24 of Younger, it is admitted, are well taken—that is to say, to so much of Judge Witherspoon's order as dismissed the action of F. H. Brown *v.* Younger and Carroll, the constable. He should have ordered that action to be retained on the calendar until it was seen that the six trial justice judgments held by Younger and Brown, Weddington & Co., were paid from the assets in the hands of Wallace, as receiver. If this is done, then an order can be taken dismissing the complaint; but if these judgments are not

so paid, it must be left in the power of these parties defendant to have Brown and his sureties pay those judgments. Exception 24 above relates to a clear omission of the Circuit Judge to provide an allowance for interest on these six trial justice judgments from the date of their rendition. The Circuit decree must be so amended.

We have thus disposed of all the exceptions save those presented by F. H. Brown, three in number. The first of these imputes error in the decree of Judge Witherspoon, in directing that the sheriff make sale of such of Massey's lands as were under the lien of judgments rendered prior to 24th May, 1892. This was not error. As soon as they were obtained, they became a lien upon Massey's lands, because he still held the title to the same, notwithstanding his futile effort to convey the same by assignment, and this lien was perfected before Judge Izlar's decree was rendered. This exception is overruled.

The second of such exceptions must be overruled also, for this being an action on the equity side of the court, it was in the discretion of the Circuit Judge to impose the payment of costs. Besides all this, we fail to see why this defendant should not pay costs, for he was certainly a losing party.

As to the third of such exceptions, it must also be overruled. We do not see that the Circuit Judge could have done otherwise under the facts in controversy.

It is the judgment of this court, that the decree of Judge Witherspoon be modified as herein required, and in all other respects affirmed, and that the cause be remanded to the Circuit Court for such further action as may be necessary.